S93G1064. DeKALB COUNTY v. J & A PIPELINE
COMPANY, INC.
(437 SE2d 327)

CARLEY, Justice.

Appellant-defendant DeKalb County undertook a public works project and the general contractor with whom appellant contracted secured a payment bond in ostensible compliance with OCGA §§ 13-10-1 (b) (2) (A) and 36-82-101. The surety on the payment bond was not authorized to do business in this state. Accordingly, the surety executed an affidavit in ostensible compliance with OCGA § 36-82-102. The payment bond and affidavit were then filed with and ap-

proved by appellant without any further inquiry as to the solvency of the surety.

Appellee-plaintiff J & A Pipeline Company, Inc. contracted with the general contractor to provide labor and material for appellant's public works project. When appellee was not paid for its labor and material, it sought to recover on the payment bond, but discovered that the surety was insolvent. Appellee then brought the instant suit against appellant, seeking to recover for its labor and material under various theories. The trial court granted appellant's motion to dismiss for failure to state a claim. On appeal, the Court of Appeals reversed the judgment dismissing appellee's complaint. *J & A Pipeline v. DeKalb County*, 208 Ga. App. 123 (430 SE2d 13) (1993). A writ of certiorari was granted to address this holding of the Court of Appeals.

1. The Court of Appeals held that OCGA §§ 13-10-1 (b) (2) (A); 36-82-101 and 36-82-102 "*together* impose a duty on [appellant] to require a payment bond, and provide for liability on the part of [appellant] if it breaches this statutory duty. [Cits.]" (Emphasis supplied.) *J & A Pipeline v. DeKalb County*, supra at 124 (1).

"A county is not liable to suit for any cause of action unless made so by statute." OCGA § 36-1-4. OCGA § 13-10-1 (b) (2) (A) does not purport to impose any duty or liability upon a county. See *Woodward Lumber Co. v. Town of Grantville*, 13 Ga. App. 405 (79 SE 221) (1913). By its terms, that statute merely provides, in relevant part, that "[n]o *contract* with . . . a county . . . for the doing of any public work shall be *valid* for any purpose, unless the contractor shall give . . . [a] payment bond with good and sufficient surety. . . ." (Emphasis supplied.) Likewise, OCGA § 36-82-101 does not purport to impose any duty or liability upon a county. See *Woodward Lumber Co. v. Town of Grantville*, supra. By its terms, that statute merely provides, in relevant part, that "[n]o *contract* . . . with a county . . . for the doing of any public work shall be *valid* for any purpose unless the contractor shall comply with Code Section 13-10-1." (Emphasis supplied.) "A bond given under [these] section[s] is to be liberally construed to effect the purpose of the law in requiring contractors to execute such bonds. [Cit.]" *Motor Supply Co. v. St. Paul Mercury Indem. Co.*, 67 Ga. App. 236, 239 (19 SE2d 737) (1942).

It is OCGA § 36-82-102 *alone* which purports to impose any duty and liability upon a county. That statute provides, in relevant part, that,

> [i]f the payment bond . . . required in paragraph (2) of subsection (b) of Code Section 13-10-1, together with [the surety's] affidavit when necessary, is not taken *in the manner and form required in this Code section*, the [county] for which work is done under the contract shall be liable to all

subcontractors and to all persons furnishing labor, skill, tools, machinery, or materials to the contractor or subcontractor thereunder for any loss resulting to them from such failure.

(Emphasis supplied.)

Accordingly, OCGA §§ 13-10-1 (b) (2) (A); 36-82-101 and 36-82-102 together do not impose a duty on a county to require a payment bond and provide for liability if the county breaches that duty. There is a statutory duty on the part of the general contractor to give a payment bond with "good and sufficient surety," the breach of which duty on the part of the general contractor will render *invalid* the underlying *contract* with the county.

If the contract for the building of [appellant's public works project] was void, certainly no action would arise against [appellant] in favor of one [, such as appellee,] who furnished labor or material to the contractor.

*Woodward Lumber Co. v. Town of Grantville*, supra at 407. The only statutory duty on the part of the county is to take, in the specified "manner and form," the general contractor's payment bond and, if necessary, the surety's affidavit, the breach of which duty on the part of the county will render it liable to subcontractors and materialmen who suffer losses thereby.

Accordingly, the issue presented for resolution in the instant case is whether appellee's complaint alleges a breach of appellant's statutory duty under OCGA § 36-82-102.

2. The Court of Appeals held that,

while a county is not absolutely liable whenever a surety on a payment bond is insolvent, it may be liable under OCGA § 36-82-102 if it fails to inquire adequately into the solvency and sufficiency of the surety where the circumstances surrounding the transaction make such failure to engage in further inquiry unreasonable.

*J & A Pipeline v. DeKalb County*, supra at 125 (1). Appellant urges that this is an erroneous extension of its limited statutory duty under OCGA § 36-82-102.

Unlike subcontractors and materialmen on private improvement projects, subcontractors and materialmen on public works projects have no viable lien claim as an alternative remedy to proceeding against the general contractor. However, one of the purposes of OCGA § 36-82-102 is to provide a comparable alternative direct action remedy to subcontractors and materialmen on public works

projects for whom the lien remedy is unavailable. See *Motor Supply Co. v. St. Paul Mercury Indem. Co.*, supra at 239; *Seibels, Bruce &c. v. Nat. Surety Corp.*, 63 Ga. App. 520, 523-524 (11 SE2d 705) (1940). Since it is a common purpose of OCGA § 36-82-102 and the lien laws to provide subcontractors and materialmen with alternative remedies to proceeding against the general contractor, the provisions of OCGA § 36-82-102 are to be construed in pari materia with the lien laws in determining the extent of a county's duty and liability under the alternative statutory direct action remedy. Compare *Atlas Supply Co. v. U. S. Fid. &c. Co.*, 126 Ga. App. 483, 484 (1) (191 SE2d 103) (1972) and *Dunn v. U. S. Fid. &c. Co.*, 45 Ga. App. 249 (164 SE 480) (1932), neither of which involved suits against a county or involved construction of statutes in pari materia with the lien laws. " 'Statutes in pari materia are those which relate to the same person or thing or the same class of person or thing, or which have a common purpose.' [Cit.]" *Maynard v. Thrasher*, 77 Ga. App. 316, 319 (48 SE2d 471) (1948).

> [I]t is . . . well settled that, where the terms of the statute to be construed are ambiguous or its significance is of a doubtful character, it becomes necessary to give proper consideration to other related statutes in order to ascertain the legislative intent in reference to the whole system of laws of which the doubtful statute is a part.

*Ryan v. Commrs. of Chatham County*, 203 Ga. 730, 732 (1) (48 SE2d 86) (1948). Accordingly, in determining the legislative intent in predicating a county's liability under OCGA § 36-82-102 upon the failure to take the general contractor's payment bond or the surety's affidavit in the specified "manner and form," the lien laws provide judicial guidance. Compare *Ingalls Iron Works Co. v. Standard Accident Ins. Co.*, 107 Ga. App. 454, 456 (1) (130 SE2d 606) (1963) and *Sunderland v. Vertex Assoc.*, 199 Ga. App. 278, 279 (1) (a) (404 SE2d 574) (1991), both of which involved suits on a payment bond and neither of which involved the issue of a county's liability under OCGA § 36-82-102.

Under the lien laws, an owner can defeat the subcontractors' and materialmen's alternative remedy by obtaining an affidavit from the general contractor which, on its face, comports with the statutory requirements of OCGA § 44-14-361.2 (a) (2). If the owner fails to secure this affidavit or if the affidavit which the owner secures does not comport with the statutory requirements, the lien remedy is not defeated. If, however, the owner secures an affidavit which, on its face, does comport with the statutory requirements, the lien remedy will be defeated notwithstanding the falsity of the affidavit. *Lowe's of Ga. v. Merwin*, 156 Ga. App. 876 (1) (275 SE2d 812) (1981). There is no

express requirement that an owner, presented with an affidavit which, on its face, comports with the statutory requirements of OCGA § 44-14-361.2 (a) (2), make any further inquiry or investigation so as to defeat the subcontractors' and materialmen's lien remedy.

Likewise, there is no express requirement that a county, presented with the general contractor's payment bond or the surety's affidavit which, on its face, comports with the statutory requirements of OCGA § 36-82-102, make any further inquiry or investigation so as to defeat the subcontractors' or materialmen's alternative direct action remedy. All that is required is that the county take the general contractor's payment bond and the surety's affidavit "in the manner and form" required in OCGA § 36-82-102. The general contractor's payment bond and the surety's affidavit are taken "in the manner" required by OCGA § 36-82-102 when they are presented to, approved by and filed with the appropriate county official. The general contractor's payment bond is taken "in the form" required by OCGA § 36-82-102 when it purports, on its face, to be submitted on behalf of a general contractor who is obligated under OCGA § 13-10-1 (a) (2) to secure such a bond for the use and protection of subcontractors and materialmen. The surety's affidavit is taken "in the form" required by OCGA § 36-82-102 when it purports, on its face, to be a statement under oath that the surety "is the fee simple owner of real estate equal in value to the amount of the [bond] over and above any and all liens, encumbrances, and exemption rights allowed by law." There is no express statutory requirement that the affidavit provide any legal descriptions of the real estate which the surety has otherwise sworn is owned in fee simple or that the real estate be located in Georgia.

It follows that the county has no greater duty to subcontractors and materialmen under OCGA § 36-82-102 than a private owner of improved property has to subcontractors and materialmen under the lien laws. If the county takes *no* payment bond from the general contractor or, if necessary, *no* affidavit from the surety, the subcontractors' and materialmen's alternative direct action remedy under OCGA § 36-82-102 will not be defeated. See *Eatonton Oil &c. Co. v. Greene County*, 181 Ga. 47, 49 (181 SE 758) (1935); *Decatur County v. Southern Clay Mfg. Co.*, 34 Ga. App. 305 (129 SE 290) (1925). Likewise, if the county does take a payment bond from the general contractor or an affidavit from the surety which, on its face, does not comport with the statutory requirements as to "form," the subcontractors' and materialmen's direct action remedy will not be defeated. See *American Surety Co. v. Small Quarries Co.*, 157 Ga. 33 (120 SE 617) (1923). If, however, the county takes a payment bond from the general contractor or an affidavit from the surety which does, on its face, comport with the statutory requirements, the subcontractors' and materialmen's direct action remedy will be defeated notwith-

standing the subsequent inefficacy of the bond or the subsequent discovery of the falsity of the affidavit.

In the instant case, the general contractor's payment bond and the surety's affidavit were submitted to appellant "in the manner and form" required by OCGA § 36-82-102. There is no express statutory requirement that, prior to taking the bond and affidavit, appellant undertake any other inquiry to determine whether the bond was "good and sufficient" or the affidavit was false. Appellee does

> not contend that [OCGA § 36-82-102] expressly require[s] the interpretation which [it] seek[s] to invoke, but contend[s] that the proper construction of the statute under decisions of the courts would imply that [its] claim . . . comes within the provisions of the statutes. We do not think so. For the purpose[s] before us, [OCGA § 36-82-102] and [OCGA § 44-14-361.2 (a) (2)] should be construed together. When so construed, it would be without the intent of the statute to hold that [appellee] is entitled to recover from [appellant]. . . .

*Seibels, Bruce &c. v. Nat. Surety Corp.*, supra at 524.

> We, of course, recognize that the possibility that a [payment bond may prove to be worthless and that a surety's] affidavit may be false works a hardship against one in [appellee's] position, but to hold otherwise would equally effect a hardship against [appellant], who would then be forced to pay twice for improvements to [its public] property. In view of [appellant's] compliance with the requisites of [OCGA § 36-82-102], we find no error in the [trial court's] grant of [appellant's] motion [to dismiss for failure to state a claim for breach of OCGA § 36-82-102].

*Lowe's of Ga. v. Merwin*, supra at 876 (1). The Court of Appeals erred, therefore, in holding that appellee's complaint states a claim for relief based upon the county's alleged breach of any statutory duty imposed on the county at the time the contract involved in this case was executed.

3. OCGA § 13-10-1 (f) provides, in relevant part, that "[a]ny . . . payment bond required by this Code section shall be approved as to form and as to *the solvency of the surety* by the officer of the . . . county . . . who negotiates the contract. . . ." (Emphasis supplied.) This statute was not in effect at the times relevant to the instant case. Accordingly, our instant holding should in no way be construed as implicating that statute. The issue of whether *OCGA § 13-10-1 (f)* is construable as a statutory authorization of a cause of action against a

county within the mandate of OCGA § 36-1-4 must await the case wherein that issue is properly presented and raised. Our instant holding is limited to the determination of whether appellee stated a claim for relief for appellant's alleged breach of *OCGA § 36-82-102*.

4. Citing *Pembroke State Bank v. Balboa Ins. Co.*, 144 Ga. App. 609 (241 SE2d 483) (1978), the Court of Appeals also held that appellee had stated a limited but viable "equitable lien" claim.

> *Pembroke* . . . hold[s] that a subcontractor may have an "equitable lien" in funds *held by* the county but belonging to another — such as funds already earned by a general contractor but not yet paid over to it when it becomes insolvent. In such a situation, the subcontractor's "lien" would allow its claim priority over the claims of the insolvent contractor's other creditors. [Cit.] Under this theory, [appellee] has a claim based on an "equitable lien" only if and to the extent [appellant] is holding a fund of monies earned by [the general contractor] but not yet paid to it.

(Emphasis in original.) *J & A Pipeline v. DeKalb County*, supra at 126 (2). Appellant enumerates this holding as error.

A lien against public property is disallowed by law and a lien which is otherwise disallowed by law cannot be imposed by equity. However, appellee's "equitable lien" claim does *not* seek to enforce a lien against public property in contravention of law. Appellee's "equitable lien" claim seeks to enforce a lien against funds which are being held by appellant, but which belong to the *general contractor*. Under appellant's contract with the general contractor, "[t]he money *as it becomes due* is charged with a lien as against the [general] contractor, in favor of the subcontractor, materialmen, and laborers." (Emphasis supplied.) *Rowell v. Harris*, 121 Ga. 239, 240 (48 SE 948) (1904).

Likewise, OCGA § 36-1-4 is not an impediment to appellee's "equitable lien" claim. Although that statute provides that a county is not liable for any cause of action unless made so by statute, appellee's "equitable lien" claim is not a cause of action which seeks to impose any liability upon appellant. It is merely an equitable remedy whereby appellee seeks access to funds which are being held by appellant, but which belong to the general contractor. If, under appellant's contract with the general contractor, money has been actually earned, but has not been paid to the general contractor, appellant has no right to retain the funds or to resist appellee's efforts to seek access to them as a means to satisfy its claim against the general contractor.

> A special or equitable lien is not an estate or property in the thing itself, nor a right to recover the thing. "It is simply a

right of a special nature over the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action." [Cits.]

(Emphasis omitted.) *Routon v. Woodbury Banking Co.*, 209 Ga. 706, 708 (75 SE2d 561) (1953).

It follows that the Court of Appeals correctly held that appellee had stated a limited but viable "equitable lien" claim.

5. The Court of Appeals correctly reversed the grant of appellant's motion to dismiss appellee's complaint for failure.to state an "equitable lien" claim, but erroneously reversed the grant of appellant's motion to dismiss appellee's complaint for failure to state a claim for violation of OCGA § 36-82-102. The issue of venue is not within the scope of the instant case and the Court of Appeals' remand for transfer pursuant to the Uniform Transfer Rules is, therefore, unaffected by our instant decision.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 16, 1993.

*Robert H. Walling, Patrick F. Henry, Jr., Jonathan A. Weintraub,* for appellant.

*James B. Ritchie, Christopher J. McFadden,* for appellee.

*Steven H. Ballard, Bryant, Davis & Cowden, Larry S. Bryant, Cynthia L. Weese, Shapiro, Fussell, Wedge & Smotherman, Michael P. Davis, Daniel M. Jennings, George E. Powell, Jr., Gleaton, Scofield, Egan & Jones, M. Michael Egan, Jr., McReynolds & Welch, J. Michael Welch,* amici curiae.